UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE GARDNER, on behalf of herself, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>BLOOMINGDALE'S, INC.,<br><br>Defendant. | **COMPLAINT**<br><br>Civil Case No.:<br>1:26-cv-4993<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff STEPHANIE GARDNER ("Plaintiff"), on behalf of herself, individually, and on behalf of all others similarly situated ("FLSA Plaintiffs" and/or "Rule 23 Plaintiffs"), by and through her attorneys, STEVENSON MARINO LLP, as and for her Complaint against BLOOMINGDALE'S, INC. ("Bloomingdale's" or "Defendant"), alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action for Defendant's violations of: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL §§ 160, 650 et seq., and New York Comp. Codes R. & Regs ("NYCRR") Tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3), as codified in the New York Wage Theft Prevention Act (the "WTPA"); (iv) the NYLL's requirement that employers pay employees for all hours worked, NYLL §§ 193, 663; and (v) any other cause(s) of action that can be inferred from the facts set forth herein.

2. Plaintiff brings this lawsuit against Defendant pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of herself, individually, and on behalf of all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of Defendant's willful violations of the FLSA.

3. Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23(b)(3), on behalf of herself, individually, and on behalf of all other persons similarly situated during the applicable NYLL limitations period who suffered damages as a result of Defendant's uniform and systemic violations of the NYLL and the NYCRR.

## PRELIMINARY STATEMENT

4. Bloomingdale's is a well-known national department store retailer that employs a workforce of commissioned sales associates at its flagship location at 59th Street and Lexington Avenue in New York City. These associates earn their compensation primarily through commissions on sales generated during scheduled store hours.

5. Central to this action, when they perform work outside those hours, including communicating with clients by phone, text, and email to facilitate sales and respond to inquiries, Bloomingdale's own written policy requires that this time be recorded and compensated at the associate's established hourly rate. But Bloomingdale's has not honored that obligation and instead has stolen millions of dollars in unpaid, off-the-clock time from its employees.

6. For years, Defendant required and permitted its commissioned sales associates to perform substantial work outside of scheduled hours, responding to client inquiries, conducting sales transactions, and carrying out related business activities, without compensating them for that time.

7. Plaintiff Stephanie Gardner, a sales associate at the Bloomingdale's 59th Street location since 2019, regularly worked at least two additional hours per day, virtually every day of her employment, amounting to at least approximately fourteen hours per week, outside her scheduled shifts in exactly this manner. Her supervisor explicitly instructed her that she would not be paid for this time, and therefore she was not paid.

8. Because Defendant applied this practice uniformly across its non-exempt commissioned sales associates, this action is brought as both an FLSA collective action and an NYLL class action to recover the unpaid overtime wages owed to Plaintiff and all others similarly situated.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, et seq. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to the claims for relief occurred within this judicial district.

11. On March 20, 2020, then-New York Governor Andrew M. Cuomo signed Executive Order 202.8, which tolled for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued through subsequent extensions of that Order via Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67, through November 3, 2020. In total, the Executive Orders provided for a toll of 228 days.

## PARTIES

***Plaintiff Stephanie Gardner***

12. Plaintiff Stephanie Gardner is an individual who, at all times relevant to this Complaint, was and is a resident of New York.

13. Plaintiff has been employed by Defendant as a commissioned sales associate at the Bloomingdale's 59th Street store, located at 1000 Third Avenue, New York, New York 10022, since 2019.

14. At all relevant times herein, Plaintiff was a "person" and an "employee" of Defendant within the meaning of the FLSA, NYLL, NYCRR, and WTPA.

***Defendant Bloomingdale's, Inc.***

15. At all relevant times herein, Defendant was and is a corporation engaged in the operation of retail department stores, with its principal place of business located at 1000 Third Avenue, New York, New York 10022.

16. At all relevant times herein, Defendant was an "employer" within the meaning of the FLSA. Defendant's qualifying annual gross volume of sales made or business done exceeds $500,000.00, Defendant employs two or more people, and Defendant was and is engaged in interstate commerce within the meaning of the FLSA, as it sources merchandise from vendors across the country and abroad, accepts payment through banking systems and credit card processors operating across state lines, and conducts business across multiple states, all of which subjects Defendant to the FLSA's overtime requirements as an enterprise.

17. At all relevant times herein, Defendant was an "employer" within the meaning of the NYLL and the NYCRR, employing fifteen or more employees in the State of New York.

## COLLECTIVE ACTION ALLEGATIONS

18. Plaintiff seeks to bring this suit to recover from Defendant unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on her own behalf, as well as on behalf of those in the following collective:

> Current and former commissioned sales associates who, during the applicable FLSA limitations period, performed work for Defendant at any Bloomingdale's retail location, and who consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them; and/or (2) liquidated damages that are legally due to them ("FLSA Plaintiffs").

19. Defendant treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek by virtue of off-clock client communications and related work activities performed outside scheduled hours; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

20. At all relevant times, Defendant was and has been aware of the requirement to pay Plaintiff and all FLSA Plaintiffs at a rate equal to one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet it purposefully and willfully chose not to do so.

21. Defendant's knowledge of this obligation is evidenced, in part, by its own written Digital Selling Work & Wage Policy, effective February 2, 2024, which expressly acknowledges that after-hours customer-initiated contact constitutes compensable work time that must be recorded and paid.

22. Despite issuing this policy, Defendant systematically failed to compensate Plaintiff and similarly situated associates for this time, demonstrating Defendant's willful violations of the FLSA by having a written policy that appears to comply with the law while having a *de facto* policy that intentionally and abjectly violates the FLSA.

23. The precise number of FLSA Plaintiffs is readily available through a review of Defendant's personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and opt-in process provided by 29 U.S.C. § 216(b).

24. All FLSA Plaintiffs are victims of Defendant's pervasive practice of willfully failing to pay overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

25. In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on her own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NYLL and the NYCRR.

26. Plaintiff seeks certification of the following FRCP 23 class:

> Current and former commissioned sales associates who performed any work for Defendant during the applicable statutory period within the State of New York ("Rule 23 Plaintiffs").

27. All of the requirements under FRCP 23(b)(3) are satisfied, as set forth below.

28. Plaintiff and the Rule 23 Plaintiffs have all been injured in that they were uncompensated for work performed outside of scheduled hours, including responding to customer inquiries and conducting sales-related activities via phone, text, and email. Plaintiff and the Rule 23 Plaintiffs were deprived of their ability to purchase with their timely wages, invest their timely

wages, accrue interest on their timely wages, or otherwise utilize the value those wages would have held had they been paid timely.

Numerosity and Ascertainability

29. During the applicable NYLL limitations period, Defendant employed at least forty employees who are putative members of this class. The precise number of the Rule 23 Plaintiffs is readily ascertainable through a review of Defendant's personnel, time, and payroll records.

Common Questions of Law and Fact

30. There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties Defendant required each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether Defendant required or permitted Rule 23 Plaintiffs to perform work outside their scheduled hours, including responding to client inquiries via phone, text, and email; (4) whether Defendant failed to pay Rule 23 Plaintiffs overtime compensation at one and one-half times their regular rates of pay for all hours worked in excess of forty hours in a workweek; (5) whether Defendant furnished Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by NYLL § 195(3); (6) whether Defendant kept and maintained accurate records of hours worked by Rule 23 Plaintiffs; (7) whether Defendant kept and maintained records with respect to the compensation it paid to Rule 23 Plaintiffs for each hour worked; (8) whether Defendant has any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (9) whether Defendant's actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and supporting regulations; and (10) what constitutes the proper measure of damages.

Typicality of Claims and Defenses

31. As described in the "Background Facts" section below, Defendant employed Plaintiff and the Rule 23 Plaintiffs within the meaning of the NYLL. Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs, as the Rule 23 Plaintiffs: work and/or have worked for Defendant as non-exempt commissioned sales associates in New York; Defendant did not pay them overtime compensation of one and one-half times their regular rates of pay for all off-clock hours worked in excess of forty per workweek; and Defendant did not provide them with accurate wage statements on each payday. Plaintiff and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL to receive overtime wages for all hours worked each week over forty and to be furnished with accurate wage statements on each payday. Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendant's failure to comply with the NYLL and supporting regulations.

Adequacy

32. Plaintiff worked the same or similar hours as the Rule 23 Plaintiffs throughout her employment with Defendant. Defendant did not pay Plaintiff overtime for off-clock hours that pushed her workweek above forty hours, and did not furnish Plaintiff with accurate wage statements on each payday, which is substantially similar to how Defendant treated the Rule 23 Plaintiffs. Plaintiff fully anticipates providing discovery responses and testifying under oath as to all matters raised in this Complaint. Thus, Plaintiff will properly and adequately represent the current and former employees whom Defendant subjected to the treatment alleged herein.

33. Additionally, Plaintiff's counsel, Stevenson Marino LLP ("SM"), has substantial experience in the field of employment law.

34. SM is a well-respected litigation firm that represents plaintiffs primarily in a wide variety of employment matters, including individual and class action litigation concerning wage and hour, discrimination, and harassment claims, among others.

35. SM is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at significant cost to the firm in terms of time, resources, and financial risk. Plaintiff's counsel has handled hundreds of employment cases in federal district courts, including dozens of Rule 23 class actions and FLSA collective actions.

36. Accordingly, Plaintiff's counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

Superiority

37. A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

38. Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class. At all relevant times, Defendant treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

39. Any lawsuit brought by any non-exempt commissioned sales associate employed by Defendant in New York would be identical to a suit brought by any other such associate for the same violations. Separate litigation would therefore risk inconsistent results.

40. Accordingly, this means of protecting the Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## BACKGROUND FACTS

***Bloomingdale's and Its Commissioned Sales Associates***

41. Bloomingdale's is a national luxury and upscale department store retailer operating multiple locations throughout the United States. Its flagship store is located at 1000 Third Avenue in New York City (the "59th Street Store").

42. Bloomingdale's employs non-exempt commissioned sales associates at its retail locations, including the 59th Street Store. These associates earn commissions as their primary form of compensation during their scheduled selling hours on the sales floor.

43. When performing non-sales work, Defendant pays these employees on an hourly basis, calculated based on their prior year's commissions earned and converting that into an hourly rate.

44. When they perform work outside of working hours, Defendant is required to pay them at this established hourly rate.

45. Defendant acknowledges that its non-exempt commissioned sales associates may be required to respond to customer-initiated communications outside of scheduled work hours.

46. In its own Digital Selling Work & Wage Policy, effective February 2, 2024 (the "Digital Selling Policy"), Bloomingdale's states: "Customers may sometimes initiate phone calls, text messages, or emails to you on your COPE device when you are off duty. If you respond to a

customer-initiated contact, you must promptly report the time worked on the Timecard E-Form (available on the Associate Portal)."

47. The Digital Selling Policy further directs: "Submit time worked on a weekly basis so that all hours are paid in the corresponding pay period."

48. The Digital Selling Policy expressly prohibits unpaid work, instructing associates: "Do not use your COPE device to initiate work outside your scheduled work hours. For example, do not use your COPE device when you are not clocked in to: 1) read, write or respond to work related emails or text messages; 2) make work related phone calls or review voice mail; 3) schedule appointments; or 4) complete any other work-related activity."

49. Taken together, the Digital Selling Policy unequivocally requires that any time spent responding to customers outside of scheduled hours must be reported and compensated.

50. But this is precisely the category of work that Defendant has refused to pay its associates for, including Plaintiff.

***Ms. Gardner's Employment at Bloomingdale's***

51. Plaintiff Stephanie Gardner began her employment at Bloomingdale's 59th Street Store in June 2019, working as a commissioned sales associate in the Chanel boutique within the store.

52. Ms. Gardner is compensated on a commission-only basis during her scheduled selling hours, earning a commission of 7.75% of her gross sales.

53. For example, in 2024 alone, she generated approximately $2 million in merchandise sales, earning total compensation of approximately $165,000.00.

54. Ms. Gardner's regular rate of pay, for purposes of compensating her for time spent performing non-selling work, is calculated based on her prior year's total compensation divided by standard full-time hours.

55. Her regular hourly rates over the relevant period have been as follows: $66.27 per hour in 2022; $85.91 per hour in 2023; $82.55 per hour in 2024; $93.20 per hour in 2025; and $102.25 per hour in 2026. Her average regular rate over this period is $85.99 per hour.

56. Her current hourly rate for 2026, $102.25 per hour, is reflected on her March 2026 paystub, which shows this rate applied to a pay code identified as "New York Meeting Worked."

57. Given her tenure and successful career as a sales person, Ms. Gardner maintains an extensive client book of business and conducts sales transactions on and off the selling floor.

58. Outside of her scheduled hours, she communicates regularly with her clients by phone, text, and email to respond to inquiries, facilitate sales, arrange appointments, and conduct related business activities.

***<u>Off-Clock Work and Defendant's Refusal to Compensate</u>***

59. For the entirety of her employment, and as is relevant to this action for at least the last six years (2020 through 2026), Ms. Gardner has worked significant hours off the clock,

60. Specifically, she has worked at least two hours per day, approximately fourteen hours per week, nearly year-round, responding to customer inquiries, effectuating sales, and performing related business activities outside of her scheduled work hours.

61. The scope of this off-clock work was so outrageous and virtually non-stop that Ms. Gardner literally responded to client communications from her hospital bed while in labor delivering her child.

62. This off-clock work includes, but is not limited to, responding by phone, text, and email to clients who contact her outside of store hours to inquire about merchandise, request assistance with purchases, and arrange transactions.

63. Ms. Gardner also communicates directly with management and Bloomingdale's store personnel after-hours, in response to her client's inquiries and to help facilitate sales.

64. Ms. Gardner has performed this work on her personal cell phone.

65. She and others similarly situated were not issued Company-Owned Personally Enabled (COPE) devices until recently in or around the end of 2025 or the beginning of 2026.

66. Even after COPE devices were issued, the nature of her client relationships, which was built over years through personal communications, has meant that clients continue to reach her on her personal device.

67. In either case, the work performed is compensable under the Digital Selling Policy.

68. Ms. Gardner's supervisor, Hayat Chahine, was at all relevant times aware that Ms. Gardner regularly performed this off-clock work.

69. When Ms. Gardner inquired about compensation for after-hours client communications, Ms. Chahine instructed her: "you are paid a lot of money, you don't get paid for the time spent talking to clients after hours."

70. This directive violated Defendant's own written Digital Selling Policy and deprived Ms. Gardner of wages to which she was legally entitled.

71. Ms. Chahine's directive effectively prohibited Ms. Gardner from reporting or claiming compensation for this off-clock time.

72. As a result, Ms. Gardner's wage statements did not reflect the full hours she worked and did not include any compensation for the after-hours work she performed.

73. Plaintiff suffered a concrete injury in fact due to Defendant's failure to provide her with timely and accurate wage statements on each pay day or a timely and accurate wage notice upon hire because, lacking any real documentation from Defendant that confirmed her eligibility to be paid for her off-the-clock hours whether under forty hours or as overtime pay, and that showed her true hours and pay, she felt unable to meaningfully advocate for herself and others due to the lack of accurate information provided to them during each pay period.

74. If Plaintiff's paystubs accurately reflected the actual hours she worked and had worked, and if she would have been made aware upon hire that she was entitled to be paid for all hours before and after her on-the-clock shifts, and at time and one-half her regular rates of pay for all hours over forty, Plaintiff would have been able to advocate for herself and for her coworkers to be paid higher wages during their employment, exactly as Plaintiff did when confronted with Defendant's other unlawful practices relating to discrimination and retaliation (as Plaintiff now has a charge of discrimination pending with the U.S. Equal Employment Opportunity Commission) and other more violations -- just as she is now doing through this action upon independently learning of her rights to be paid overtime.

75. Indeed, because Plaintiff was not aware that she should have received compensation for the work before and after her shifts responding to customer / client inquiries, and that she should have received straight-time and/or overtime compensation for all hours worked, Plaintiff waited years before raising her wage complaints against Defendant, causing her to lose the time-value of the money she should have earned if she was accurately appraised of her total hours worked each week without receiving pay for all of those hours at the correct rates.

76. Ms. Gardner's regularly scheduled in-store hours, combined with the minimum of approximately fourteen hours per week of off-clock work she performed, resulted in her routinely working well in excess of forty hours per workweek virtually every week.

77. Defendant paid her no compensation – neither overtime nor straight-time – for the hours worked beyond forty.

78. The pattern of requiring and permitting commissioned sales associates to perform off-clock client communications without compensation was not limited to Ms. Gardner.

79. The Chanel boutique within the Bloomingdale's 59th Street Store alone employs approximately fifteen sales associates in the handbag department, all of whom operate under the same commission-based compensation structure.

80. Upon information and belief, Defendant applied the same practices to other non-exempt commissioned sales associates at its stores throughout New York, who were similarly required or permitted to respond to client communications outside of scheduled hours without receiving overtime pay.

***Defendant Attempts to Interfere with Rights of Putative Class After Receiving Notice of Putative Class-wide Claims***

81. On March 13, 2026, Plaintiff's counsel served a formal Notice upon Defendant, advising Defendant that Ms. Gardner was asserting claims for her unpaid off-the-clock wages.

82. That notice placed Defendant on unambiguous notice that Ms. Gardner's off-the-clock wage claims were the subject of potential litigation, including potential class-wide litigation on behalf of all similarly situated commissioned sales associates.

83. Following service of that notice, the parties entered into pre-litigation discussions regarding the potential resolution of Ms. Gardner's claims.

84. Throughout that period, Defendant was fully aware that, absent resolution, this action would be filed as a class and collective action on behalf of all non-exempt commissioned sales associates subjected to the same off-the-clock work practices.

85. On June 12, 2026, while the parties' discussions remained ongoing, Defendant's Human Resources Business Partner, Amanda Conery, sent a mass email to Defendant's sales team employees directing them, as a "mandatory requirement," to complete an attached Off-the-Clock Work Certification Form.

86. The email stated: "We are currently conducting a review of our timekeeping practices to ensure that all time worked has been properly recorded and that colleagues have been paid accurately for all hours worked."

87. The certification form acknowledged: "It has come to our attention that there may be instances where all time worked has not been recorded (for example, time spent texting or speaking with clients or colleagues outside of scheduled shifts regarding sales, merchandise availability, or similar matters)."

88. Employees were required to "identify[] any workweeks in which you believe you performed work outside of your recorded hours and provide your best good faith estimate of the time worked," covering a period stretching back to at least 2020.

89. By sending this email, Defendant has effectively conceded the core allegations of this Complaint, as Defendant's own communication acknowledges that its commissioned sales associates performed unrecorded, uncompensated work outside their scheduled hours (precisely the off-the-clock conduct described herein) and that its timekeeping practices failed to capture and pay for that time.

90. This acknowledgment constitutes a virtual admission of liability for the wage violations alleged herein.

91. Moreover, by directing this communication to the very employees who comprise the putative class in this action, after receiving notice of Ms. Gardner's individual and class-wide claims, and while negotiating a potential resolution of those claims, Defendant has improperly attempted to interfere with the rights of putative class members.

92. By requiring putative class members to submit self-reported off-the-clock estimates through a process designed, controlled, and evaluated entirely by Defendant, and without affording those employees notice of the pendency of this litigation or access to independent counsel, Defendant has sought to unilaterally manage, minimize, and resolve class-wide wage claims on its own terms, all while shifting Defendant's responsibility under federal and state law to keep and maintain accurate, contemporaneous time records onto a class of unknowing employees.

93. Plaintiff and all putative class members are entitled to have their claims adjudicated through the class and collective action process free from such interference

***Estimated Damages***

94. Based on a conservative estimate of fourteen hours of off-clock work per week on a class-wide basis, estimated actual damages range from approximately $6,476,785.71 for a class of 25 similarly situated associates to approximately $51,814,285.71 for a class of 200, based on comparable rates of pay, tenure, and unpaid hours per week.

95. Each hour that Plaintiff and the Rule 23 Plaintiffs worked was for Defendant's benefit. Defendant acted in the manner described herein so as to minimize its overhead while maximizing profits.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**

*Unpaid Overtime under the FLSA*

(On Behalf of Plaintiff and FLSA Plaintiffs)

96. Plaintiff and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

97. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

98. As described above, Defendant is an “employer” within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are “employees” within the meaning of the FLSA.

99. Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week by performing off-clock work outside their scheduled hours, yet Defendant failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA’s overtime provisions.

100. Defendant willfully violated the FLSA. Despite issuing a written policy acknowledging that after-hours customer contact constitutes compensable work time, Defendant instructed Plaintiff not to report this time and failed to compensate Plaintiff and similarly situated associates for any of the hours worked beyond forty in a workweek.

101. Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

102. Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys’ fees, and costs for Defendant’s violations of the FLSA’s overtime provisions.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT**
*Unpaid Overtime under the NYLL and the NYCRR*
(On Behalf of Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs)

103. Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

104. N.Y. Lab. Law § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

105. Defendant is an "employer" within the meaning of the NYLL and the NYCRR, while Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs are "employees" within the meaning of the NYLL and the NYCRR.

106. Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs worked in excess of forty hours per workweek, yet Defendant failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

107. Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

108. Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendant's violations of the NYLL's and NYCRR's overtime provisions.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANT**
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*
(On Behalf of Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs)

109. Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

110. N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

111. Defendant is an "employer" within the meaning of the NYLL, while Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs are "employees" within the meaning of the NYLL.

112. As described above, Defendant, on each payday, failed to furnish Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs with accurate wage statements containing the criteria required under the NYLL, specifically by failing to accurately record all hours worked and all wages owed, including overtime hours performed off the clock.

113. Pursuant to NYLL § 198(1-d), Defendant is liable to Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Unpaid Wages under the NYLL*
(On Behalf of Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs)

114. Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff(s) who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

115. NYLL § 663(1) provides in part "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she will recover in a civil action the amount of such underpayments. . . ."

116. Defendant willfully failed to compensate Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff(s) who opts-into this action with wages for all the hours worked under forty per week whenever they worked fewer than forty hours in a week in-store, but continued working off-

the-clock after-hours responding to customer / client inquiries, servicing clients, and communicating with Defendant staff and management to facilitate sales.

117. As result, Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff(s) who opts-into this action are entitled to payment of these hours at their regular rate of pay.

118. Specifically, Defendant's failure to pay these hours – known as "gap time" wages – is prohibited by Section 193 of the New York Labor Law which expressly prohibits an employer from making unauthorized deductions from employees' wages.

119. Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff(s) who opts-into this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NYLL

## DEMAND FOR A JURY TRIAL

120. Pursuant to FRCP 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs respectfully demand judgment against Defendant as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendant, and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with Defendant, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendant from any retaliation against Plaintiff, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form in this litigation;

d. Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e. Certification of the claims brought in this case under the NYLL as a class action pursuant to FRCP 23;

f. Designation of Plaintiff and her counsel as class and collective action representatives under the FRCP and the FLSA;

g. An award of damages for all unpaid straight-time and/or overtime compensation due and owing to Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs, plus liquidated damages, interest, and attorneys' fees and costs as provided for under the FLSA and NYLL;

h. An award for failure to provide accurate wage statements as required by NYLL § 195(3);

i. A service award to Plaintiff for her role as class and collective action representative;

j. An award to Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs for the costs and disbursements of this action, including reasonable attorneys' fees, expert fees, and other costs;

k. Pre-judgment and post-judgment interest, as provided by law; and

l. Granting Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated: Deer Park, New York
June 12, 2026

Respectfully submitted,
**STEVENSON MARINO LLP**

By: ______________________________
MICHAEL R. MINKOFF, ESQ.
2000 Deer Park Avenue
Deer Park, NY 11729
*Attorneys for Plaintiff and Putative Collective and Class*